UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY CIAVONE,

    Petitioner,

v.

GRETCHEN WHITMER, *et al.*,

    Respondents.
_____/

Case No. 1:24-cv-12369

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER (1) DENYING PETITIONER'S MOTION TO CONVERT FILING, (2) DENYING AS MOOT PETITIONER'S MOTION TO STRIKE, (3) DENYING PETITIONER'S MOTION FOR EXPEDITED INJUNCTIVE RELIEF, AND (4) TRANSFERRING SUCCESSIVE PETITION FOR A WRIT OF HABEAS CORPUS TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

On September 10, 2024, Petitioner Anthony Ciavone filed a petition seeking immediate release from confinement, docketed as a petition for a writ of habeas corpus. Shortly after, Petitioner filed a motion for expedited injunctive relief. Petitioner then filed a motion seeking an order directing the Clerk of Court to convert his Habeas Petition to a civil rights complaint. Less than a month later, Petitioner filed a motion to strike his Motion to Convert his Habeas Petition to a civil rights complaint.

As explained below, because the Petition seeks habeas relief, Petitioner's Motion to Convert his Habeas Petition to a civil rights complaint will be denied, and his Motion to Strike will be denied as moot. Further, because this Petition is a successive habeas petition, it must be transferred to the United States Court of Appeals for the Sixth Circuit to determine this Court's jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2244(b)(3). And because this Court lacks jurisdiction to consider Petitioner's claims at this juncture, his Motion seeking expedited injunctive relief will be denied without prejudice.

**I.**

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir.2009):

> Defendant [Anthony Ciavone] and co-defendant William Hill were tried together, to separate juries, for the murder of Jeannette Zummo, who was found dead in her Palmer Park home in Detroit on December 19, 1999. The cause of death was manual strangulation. Zummo was 85 years old at the time, kept large amounts of cash hidden throughout her house, and had no children. A home health care aid, Martha Chenney, attended to Zummo three days a week, and David Holt, a friend whom Zummo had appointed as one of her two trustees, visited Zummo regularly.
>
> Frank Hodges, a handyman that had worked in Zummo's neighborhood, was arrested about a year after Zummo's murder, and made a statement to the police confessing to having robbed and murdered Zummo. However, Hodges was tried, presented an alibi defense, and was acquitted of all charges.
>
> In April 2004, defendant and co-defendant Hill were tried for Zummo's murder. There was no physical evidence tying defendant to the murder, and no witness placing him at the murder scene. The prosecution's case rested largely on the testimony of three associates of defendant and co-defendant Hill, Hadel, Lane, and Salaytah, all of whom, along with Hill, were caught red-handed robbing a cigarette store in Macomb County in 2002. After being arrested for that robbery, Hadel, Lane and Salaytah came forward and informed authorities that defendant and Hill had robbed and killed Zummo. The prosecution also called a jail-house informant, Joseph Addelia, who testified that he and defendant had been cellmates in Wayne County jail for a few weeks in August 2003, and that defendant told him he and Hill robbed and murdered Zummo. Addelia had served time for bank robbery and was being held in jail for unarmed bank robbery at the time. Addelia testified that he had his mother contact the Detroit Police Homicide division out of repulsion, and that he got nothing in return for his testimony, either from the Wayne County prosecutor, Detroit police, or the federal authorities.
>
> Defense counsel in opening statement cast suspicion for Zummo's murder on Hodges and on David Holt, noting that Holt was a revocable trustee of Zummo's, that Holt and Zummo had argued about money shortly before her murder, and that Holt inherited Zummo's house and several hundred thousand dollars from her. Defense counsel stated that Hadel, Lane and Salaytah were thieves, did not come forward until years after the murder when they were arrested for the cigarette store robbery, and that they believed defendant had tipped the police off about the Macomb County robbery, thus they had reason to concoct testimony against defendant.

> At trial, Holt testified that Zummo's house needed new roofing, that he had recommended TLC Roofing, and that TLC had called him with an estimate for the job. Defendant was the owner of TLC Roofing.
>
> Hadel, Lane and Salaytah testified at trial that they had known defendant and Hill for years, and that defendant had told them that he and Hill robbed Zummo and that Hill killed her, and that Hill had told them he and defendant had robbed Zummo and defendant killed her. Lane also testified that defendant asked him one evening to be dropped off in the Palmer Park area because he was owed money by a man he had done work for. Hadel testified that defendant called him very late one night and asked that he pick him up at Seven Mile and Woodward, which is near Palmer Park, and that when he picked defendant up, defendant said that they had to pick Hill up down the road. Hadel testified that Hill ran out of some bushes, carrying a bag that he later learned contained tens of thousands of dollars. Lane testified that he heard after he was convicted of the Macomb County robbery that defendant or defendant's wife had tipped off the authorities about that robbery. Neither defendant nor co-defendant Hill testified.
>
> The jury convicted defendant of first-degree murder and felony murder, and co-defendant Hill of second-degree murder and felony murder.

*People v. Ciavone*, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec.11, 2007) (internal quotations omitted). Following his conviction, Petitioner was sentenced to life imprisonment. *Ciavone v. Mackie*, No. 11-14641, 2014 WL 354515, at *2 (E.D. Mich. Jan. 31, 2014).

Petitioner later filed a habeas petition challenging this conviction and confinement. *Ciavone v. Mackie*, 2014 WL 354515, at *1. The petition was ultimately denied. *Ciavone v. Mackie*, No. 11-14641, 2015 WL 10376611 (E.D. Mich. June 19, 2015), *aff'd sub nom. Ciavone v. Woods*, No. 15-2093, 2016 WL 4174427 (6th Cir. Aug. 8, 2016), *cert. den. sub nom. Ciavone v. Horton*, 137 S. Ct. 2127 (2017). Since then, the United States Court of Appeals for the Sixth Circuit has denied Petitioner permission to file a successive habeas petition *five* times. *In Re Ciavone,* No. 16-2162, 2017 WL 1174398 (6th Cir. Mar. 23, 2017); *In Re Ciavone,* No. 17-1483, 2017 WL 4250078 (6th Cir. Sept. 26, 2017); *In Re Ciavone*, No. 20-1282 (6th Cir. July 17, 2020); *In Re Ciavone,* No. 22-1902 (6th Cir. Jan. 20, 2023); *In Re Ciavone,* No. 23-1616 (6th Cir. Nov. 17, 2023).

Even so, on September 10, 2024, Petitioner filed a *pro se* Petition that he characterizes as a "civil rights" complaint. ECF No. 1. In the Petition, Petitioner claims that (1) he has newly discovered evidence that state officers conspired to fabricate a finding that he was competent to stand trial and that federal officers fabricated a competency hearing transcript to conceal the fraudulent conspiracy, (2) his appellate counsel offered perjured testimony to conceal that he had been illegally sedated during his pretrial and trial proceedings, rendering him incompetent, and (3) he has new evidence that his appellate counsel gave perjured testimony. *Id.* at PageID.1. Petitioner seeks release from confinement based on these allegations. *Id.* at PageID.78. Because the Petition seeks habeas relief and challenges the validity of Petitioner's confinement, it was docketed as a petition for a writ of habeas corpus. *See* ECF No. 9 at PageID.453.

That same day, Petitioner filed a motion for a temporary restraining order and preliminary and permanent injunctions, seeking immediate release from confinement. ECF No. 3. Ten days later, Petitioner filed a motion seeking an order directing the Clerk of Court to convert this case from a habeas corpus action to a civil rights action. ECF No. 6. Petitioner later filed a motion to strike his Motion seeking to convert this case from a habeas corpus action to a civil rights action, seemingly under the impression that the case wasn't actually filed as a habeas case. ECF No. 9.

## II.

Starting with Petitioner's Motion seeking an order directing the Clerk of Court to convert this case from a habeas corpus action to a civil rights action, ECF No. 6, will be denied because the Petition sounds in habeas corpus—not a civil rights action. Where, as here, a prisoner is challenging the very fact or duration of his imprisonment and the relief that he seeks is immediate release or a quicker release from that imprisonment, his sole avenue for relief is a petition for a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Further, even if this Court

- 4 -

were to convert the case to a civil rights action, it would still be the equivalent of a second or successive habeas petition that, as explained below, would require this Court to transfer it to the Sixth Circuit for a certificate of authorization under 28 U.S.C. § 2244(b)(3)(A). Indeed, a habeas petitioner's filing should be construed as a second or successive habeas petition where "[t]he motion's factual predicate deals primarily with the constitutionality of the underlying state [or federal] conviction or sentence." *In Re Abdur'Rahman*, 392 F.3d 174, 181 (6th Cir. 2004) (citing *Rodwell v. Pepe*, 324 F.3d 66, 70 (1st Cir. 2003)). And the Petition here primarily attacks the constitutionality of Petitioner's conviction and confinement. *See generally* ECF No. 1. So Petitioner's filing is better characterized as a petition for a writ of habeas corpus, and this case will remain a habeas corpus action.

Because this case remains a habeas corpus action, the Petition must be transferred to the Sixth Circuit. A person seeking to file a second or successive habeas petition must first ask the appropriate court of appeals—here, the Sixth Circuit—for an order authorizing the district court to consider the petition. *See* 28 U.S.C. § 2244(b)(3)(A); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 641 (1998). And when a habeas petitioner files a second or successive petition for habeas corpus relief in the district court without preauthorization from the court of appeals, the district court must transfer the document to the court of appeals. *In re Sims*, 111 F.3d 45, 47 (6th Cir.1997) ("[W]hen a prisoner has sought § 2244(b)(3) permission from the district court, or when a second or successive petition for habeas corpus relief or § 2255 motion is filed in the district court without § 2244(b)(3) authorization from this court, the district court shall transfer the document to this court" under 28 U.S.C. § 1631.). Here, the Petitioner has already filed a petition for a writ of habeas corpus that was denied with prejudice. *See Ciavone*, 2015 WL 10376611 at *6. Thus, his Petition is a successive habeas petition, and the Sixth Circuit must first review the Petition under 28 U.S.C.

§ 2244(b)(3)(A) to determine this Court's jurisdiction to consider Petitioner's claims.[1] Finally, because this Court lacks jurisdiction to consider Petitioner's claims at this juncture, this Court also lacks jurisdiction to consider his Motion seeking a temporary restraining order and preliminary and permanent injunctions. *See Johnson v. Bredesen*, No. CIV.A. 3:09-1133, 2009 WL 4581509, at *5 (M.D. Tenn. Nov. 30, 2009).

In sum, Petitioner's Motion seeking to convert his habeas petition to a civil rights complaint, ECF No. 6, will be denied, and his Motion to Strike that Motion, ECF No. 9, will be denied as moot. And Petitioner's Motion seeking a temporary restraining order and preliminary and permanent injunctions, ECF No. 3, will be denied without prejudice. Finally, the Clerk of Court will be directed to transfer the Petition to the Sixth Circuit to determine this Court's jurisdiction to consider Petitioner's claims.

### III.

Accordingly, it is **ORDERED** that Petitioner's Motion seeking to convert his habeas petition to a civil rights complaint, ECF No. 6, is **DENIED**.

Further, it is **ORDERED** that Petitioner's Motion to Strike, ECF No. 9, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Petitioner's Motion for Temporary Restraining Order and Preliminary and Permanent Injunctions, ECF No. 3, is **DENIED WITHOUT PREJUDICE**.

---

[1] The fact that Petitioner filed his habeas petition under 28 U.S.C. §§ 1331 and 2241 does not permit him to circumvent the limitations in 28 U.S.C. § 2244 on filing successive habeas petitions. Indeed, the limitations in § 2244 apply to habeas petitions filed under 28 U.S.C. § 2241 by a person who is in custody pursuant to a state court judgment. *See Rittenberry v. Morgan*, 468 F.3d 331, 336–37 (6th Cir. 2006) ("[S]ection 2244(b) applies to any habeas corpus petition seeking relief from custody pursuant to a state court judgment."). So Petitioner must still seek authorization from the Sixth Circuit under § 2244(b) to file this petition even though it was filed under 28 U.S.C. §§ 1331 and 2241. *Id.* at 338.

Further, it is **ORDERED** that the Clerk of Court is **DIRECTED** to transfer the successive Petition to the United States Court of Appeals for the Sixth Circuit.

| | |
|---|---|
| Dated: January 15, 2025 | s/Thomas L. Ludington<br>THOMAS L. LUDINGTON<br>United States District Judge |