UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY CIAVONE,

    Petitioner,                                         Case No. 1:24-cv-12369

v.                                                       Honorable Thomas L. Ludington
                                                         United States District Judge

GRETCHEN WHITMER, *et al.*,

    Respondents.
_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION TO ALTER OR AMEND**

On September 10, 2024, Petitioner Anthony Ciavone filed a petition seeking immediate release from confinement, docketed as a petition for a writ of habeas corpus. Shortly after, Petitioner filed a motion for expedited injunctive relief. Petitioner then filed a motion seeking an order directing the Clerk of Court to convert his Habeas Petition to a civil rights complaint. Less than a month later, Petitioner filed a motion to strike his Motion to Convert his Habeas Petition to a civil rights complaint.

On January 15, 2025, Petitioner's motions were denied, and his Petition was transferred to the Sixth Circuit as a second successive petition 28 U.S.C. § 2244(b). Soon after, Petitioner moved to amend or alter that decision, arguing that an exception to § 2244(b)'s second successive petition rule applies. As explained below, Petitioner's Motion to Amend will be denied.

I.

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant [Anthony Ciavone] and co-defendant William Hill were tried together, to separate juries, for the murder of Jeannette Zummo, who was found dead in her Palmer Park home in Detroit on December 19, 1999. The cause of death was

manual strangulation. Zummo was 85 years old at the time, kept large amounts of cash hidden throughout her house, and had no children. A home health care aid, Martha Chenney, attended to Zummo three days a week, and David Holt, a friend whom Zummo had appointed as one of her two trustees, visited Zummo regularly.

Frank Hodges, a handyman that had worked in Zummo's neighborhood, was arrested about a year after Zummo's murder, and made a statement to the police confessing to having robbed and murdered Zummo. However, Hodges was tried, presented an alibi defense, and was acquitted of all charges.

In April 2004, defendant and co-defendant Hill were tried for Zummo's murder. There was no physical evidence tying defendant to the murder, and no witness placing him at the murder scene. The prosecution's case rested largely on the testimony of three associates of defendant and co-defendant Hill, Hadel, Lane, and Salaytah, all of whom, along with Hill, were caught red-handed robbing a cigarette store in Macomb County in 2002. After being arrested for that robbery, Hadel, Lane and Salaytah came forward and informed authorities that defendant and Hill had robbed and killed Zummo. The prosecution also called a jail-house informant, Joseph Addelia, who testified that he and defendant had been cellmates in Wayne County jail for a few weeks in August 2003, and that defendant told him he and Hill robbed and murdered Zummo. Addelia had served time for bank robbery and was being held in jail for unarmed bank robbery at the time. Addelia testified that he had his mother contact the Detroit Police Homicide division out of repulsion, and that he got nothing in return for his testimony, either from the Wayne County prosecutor, Detroit police, or the federal authorities.

Defense counsel in opening statement cast suspicion for Zummo's murder on Hodges and on David Holt, noting that Holt was a revocable trustee of Zummo's, that Holt and Zummo had argued about money shortly before her murder, and that Holt inherited Zummo's house and several hundred thousand dollars from her. Defense counsel stated that Hadel, Lane and Salaytah were thieves, did not come forward until years after the murder when they were arrested for the cigarette store robbery, and that they believed defendant had tipped the police off about the Macomb County robbery, thus they had reason to concoct testimony against defendant.

At trial, Holt testified that Zummo's house needed new roofing, that he had recommended TLC Roofing, and that TLC had called him with an estimate for the job. Defendant was the owner of TLC Roofing.

Hadel, Lane and Salaytah testified at trial that they had known defendant and Hill for years, and that defendant had told them that he and Hill robbed Zummo and that Hill killed her, and that Hill had told them he and defendant had robbed Zummo and defendant killed her. Lane also testified that defendant asked him one evening to be dropped off in the Palmer Park area because he was owed money by a man he had done work for. Hadel testified that defendant called him very late one night and asked that he pick him up at Seven Mile and Woodward, which is near Palmer Park,

> and that when he picked defendant up, defendant said that they had to pick Hill up down the road. Hadel testified that Hill ran out of some bushes, carrying a bag that he later learned contained tens of thousands of dollars. Lane testified that he heard after he was convicted of the Macomb County robbery that defendant or defendant's wife had tipped off the authorities about that robbery. Neither defendant nor co-defendant Hill testified.
>
> The jury convicted defendant of first-degree murder and felony murder, and co-defendant Hill of second-degree murder and felony murder.

*People v. Ciavone*, No. 256187, 2007 WL 4322168 (Mich. Ct. App. Dec.11, 2007) (internal quotations omitted). Following his conviction, Petitioner was sentenced to life imprisonment. *Ciavone v. Mackie*, No. 11-14641, 2014 WL 354515, at *2 (E.D. Mich. Jan. 31, 2014).

Petitioner later filed a habeas petition challenging this conviction and confinement. *Ciavone v. Mackie*, 2014 WL 354515, at *1. The petition was ultimately denied. *Ciavone v. Mackie*, No. 11-14641, 2015 WL 10376611 (E.D. Mich. June 19, 2015), *aff'd sub nom. Ciavone v. Woods*, No. 15-2093, 2016 WL 4174427 (6th Cir. Aug. 8, 2016), *cert. den. sub nom. Ciavone v. Horton*, 137 S. Ct. 2127 (2017). Since then, the United States Court of Appeals for the Sixth Circuit has denied Petitioner permission to file a successive habeas petition five times. *In Re Ciavone,* No. 16-2162, 2017 WL 1174398 (6th Cir. Mar. 23, 2017); *In Re Ciavone,* No. 17-1483, 2017 WL 4250078 (6th Cir. Sept. 26, 2017); *In Re Ciavone*, No. 20-1282 (6th Cir. July 17, 2020); *In Re Ciavone,* No. 22-1902 (6th Cir. Jan. 20, 2023); *In Re Ciavone,* No. 23-1616 (6th Cir. Nov. 17, 2023).

Even so, on September 10, 2024, Petitioner filed a *pro se* Petition that he characterized as a "civil rights" Complaint. ECF No. 1. In the Petition, Petitioner claimed that (1) he has newly discovered evidence that state officers conspired to fabricate a finding that he was competent to stand trial and that federal officers fabricated a competency hearing transcript to conceal the fraudulent conspiracy, (2) his appellate counsel offered perjured testimony to conceal that he had been illegally sedated during his pretrial and trial proceedings, rendering him incompetent, and (3)

he has new evidence that his appellate counsel gave perjured testimony. *Id.* at PageID.1. Petitioner sought release from confinement based on these allegations. *Id.* at PageID.78. Because the Petition seeks habeas relief and challenges the validity of Petitioner's confinement, it was docketed as a petition for a writ of habeas corpus. *See* ECF No. 9 at PageID.453.

That same day, Petitioner moved for a temporary restraining order and preliminary and permanent injunctions, seeking immediate release from confinement. ECF No. 3. Ten days later, Petitioner filed a motion seeking an order directing the Clerk of Court to convert this case from a habeas corpus action to a civil rights action. ECF No. 6. Petitioner later moved to strike his Motion seeking to convert this case from a habeas corpus action to a civil rights action, seemingly under the impression that the case was not actually filed as a habeas case. ECF No. 9.

On January 15, 2025, Petitioner's motions were denied, and his Petition was transferred to the Sixth Circuit as a second successive petition. ECF No. 10. On February 7, 2025, Petitioner moved to amend or alter that decision. ECF No. 12. And on March 5, 2025, the Sixth Circuit dismissed the Petition for want of prosecution. *See In Re Ciavone*, Case No. 25-1046 (6th Cir. Mar. 5, 2025).

## II.

Decisions to alter or amend judgments under Civil Rule 59(e) are within the district court's discretion. *Davis v. Jellico Cmty. Hosp., Inc*., 912 F.2d 129, 132 (6th Cir. 1990). A motion to alter or amend judgment will only be granted if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). But these motions may not be used to raise "new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, 590 U.S. 504, 508 (2020). And a motion to

alter or amend judgment is not a substitute for an appeal. *Johnson v. Henderson*, 229 F. Supp. 2d 793, 796 (N.D. Ohio 2002). Indeed, district courts must deny a motion to alter or amend a judgment if it merely relitigates old matters. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018).

### III.

To support his Motion to Alter or Amend the January 15, 2025 Opinion and Order, ECF No. 10, Petitioner argues that his Petition falls under an exception to § 2244(b)'s second successive petition rule. *See* ECF No. 12 at PageID.464. To that end, he contends the claims in his present Petition were not ripe when he filed his initial habeas petition in 2014. *See id.* at PageID.464, 469–72. Specifically, he alleges that he did not retrieve evidence that state-court records concerning a competency hearing were fabricated until 2022. *See id.* at PageID.464–65, 471. As a result, Petitioner contends that his Petition did not require transfer to the Sixth Circuit for jurisdictional screening. *See generally id.* But this argument lacks merit.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits federal courts' ability to entertain repeat applications for habeas relief. *In re Tibbetts*, 869 F.3d 403, 405 (6th Cir. 2017). Under AEDPA, a state prisoner who has already sought habeas review may not file a "second or successive" petition in the district court without first obtaining authorization from the court of appeals. 28 U.S.C. § 2244(b); *In re Stansell*, 828 F.3d 412, 414 (6th Cir. 2016). To be sure, a habeas petition is not "second or successive" when it raises a claim that was unripe for review at the time of the first filing. *In re Tibbetts*, 869 F.3d at 406. But a claim qualifies as unripe only if the factual predicate had not yet occurred when the earlier petition was filed. *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010).

Here, Petitioner's alleged predicate facts were in existence when he filed his original petition and other petitions—even if he lacked awareness of them at that time. *See In re Wogenstahl*, 902 F.3d 621, 627–28 (6th Cir. 2018); *Thomas v. Schiebner*, No. 2:22-CV-11941-TGB-APP, 2022 WL 4227867, at *2 (E.D. Mich. Sept. 13, 2022); *Couron v. Christiansen*, No. 1:19-CV-13176, 2019 WL 12043589, at *2 (E.D. Mich. Nov. 4, 2019). Thus, Petitioner's present claims were ripe when he filed those petitions, rendering his Petition a second successive petition requiring Sixth Circuit screening. *Wogenstahl*, 902 F.3d at 628. So Petitioner's Motion to Amend or Alter, ECF No. 12, will be denied.

## IV.

Accordingly, it is **ORDERED** that Petitioner's Motion to Amend or Alter, ECF No. 12, is **DENIED**.

Dated: September 2, 2025                    s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge